SLT:CAC

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**M 11-1098**

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

PHILIP HAROLD TARBELL,

        Defendant.

- - - - - - - - - - - - - - - - -X

C O M P L A I N T

(T. 21, U.S.C., § 846
 and 841(a))

EASTERN DISTRICT OF NEW YORK, SS:

   MILIGROS SERRANO, being duly sworn, deposes and states that she is a Detective with the Nassau County Police Department currently assigned to the Drug Enforcement Administration ("DEA") Task Force, duly appointed according to law and acting as such.

   Upon information and belief, on or about November 3, 2011, within the Eastern District of New York and elsewhere, the defendant PHILIP HAROLD TARBELL, together with others, did knowingly and intentionally conspire to possess with intent to distribute a controlled substance, which offense involved a substance containing MDMA, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

   (Title 21, United States Code, Sections 846 and 841(b)(1)(C)).

The source of my information and grounds for my beliefs are as follows:[1]

1. I have been a Nassau County Detective for approximately seven years and am currently assigned to the Long Island District Office of the DEA Task Force (the "Task Force"), where I am tasked with investigating narcotics trafficking, money laundering and other offenses. I am cross-designated as a Special Agent of the DEA. During my tenure with the DEA, I have participated in numerous narcotics investigations during the course of which I have conducted physical and wire surveillance, executions of search warrants, and reviews and analyses of numerous taped conversations and records of drug traffickers. Through my training, education and experience -- which has included numerous instances of debriefing cooperating drug traffickers, monitoring wiretapped conversations of drug traffickers, conducting searches of locations where drugs and money have been found, and conducting surveillance of individuals engaged in drug trafficking -- I have become familiar with the manner in which illegal drugs are imported and distributed, the

---

[1] The information set forth below is based upon my personal involvement in this investigation, as well as conversations with other law enforcement officers and my review of records and reports. In addition, because this affidavit is being submitted for the limited purpose of establishing probable cause to charge TARBELL, I have not set forth every fact learned during the course of this investigation. Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part only.

2

method of payment for such drugs, and the efforts of persons involved in such activity to avoid detection by law enforcement.

2. On November 3, 2011, at approximately 3:30 p.m., an undercover law enforcement agent posing as a drug distributor (the "UC"), received a telephone call from an individual who identified himself as "Phil." During this conversation, "Phil," who was subsequently identified as the defendant PHILIP HAROLD TARBELL, negotiated a drug transaction in which he agreed to supply the UC with 1,800 pills of MDMA (more commonly referred to as "ecstasy").

3. Approximately one hour later, the UC called TARBELL to ask if he had the "pills," to which TARBELL replied that he did. TARBELL stated that he was at the New York/New Jersey border and that he would like to meet with the UC to complete the transaction. The UC informed TARBELL that he/she was in Queens, New York, and arranged to meet TARBELL at the Fairfield Inn near John F. Kennedy Airport.

4. At approximately 7:30 p.m., TARBELL called the UC to advise that he was at the designated meeting location. The UC asked TARBELL what vehicle he was driving, and TARBELL stated that he was driving a brown Buick.

5. Shortly thereafter, the UC arrived at the meeting location and observed a male individual standing in close proximity to a brown Buick. The UC approached the individual,

who identified himself as "Phil."[2/] Thereafter, the UC and TARBELL began to discuss the details of their narcotics transaction. The meeting was surreptitiously recorded by the UC, who was wearing a body wire. During this meeting, TARBELL confirmed that he had 1,800 pills, and that the price per pill would be $10.00.[3/] The UC and TARBELL then discussed future transactions for a larger quantity of pills. TARBELL informed the UC that for the next transaction, he could supply 3,000 to 4,000 pills. The UC agreed but suggested that he/she should pay slightly less than $10 per pill on this larger shipment.

      6. After discussing the MDMA pills, TARBELL also advised the UC that he could supply large quantities of marijuana (200 to 300 pounds at a time). The UC indicated that he/she was interested, but that TARBELL and his organization would have to transport the marijuana directly to Queens, as the UC did not want to travel out of the Queens area in order to pick up the 200 to 300 pounds of marijuana.

      7. At this point in the conversation, the UC asked TARBELL to see the MDMA pills. TARBELL opened the trunk of his

---

[2/]    Upon the individual's arrest, I confirmed that "Phil" is the defendant PHILLIP HAROLD TARBELL based on his license and Mohawk Indian Reservation card. During the arrest processing, the defendant further confirmed his true identity is PHILLIP HAROLD TARBELL.

[3/]    Based on my training and experience, I know that when sold at retail level, 1,800 MDMA pills would have an approximate street value of $50,000 to $60,000.

4

brown Buick and told the UC that the pills were contained in heat sealed plastic within a candy box. At TARBELL's instruction, the UC retrieved a candy box from the trunk of TARBELL's vehicle and opened the box. Inside the box were numerous pills inside a heat sealed wrapper. Upon observing the pills, the UC gave an arrest signal to the nearby surveillance team, who promptly placed the defendant under arrest.

8. Subsequent to the arrest of the defendant PHILIP HAROLD TARBELL, a field-test was performed on the pills contained in the candy box that the UC had obtained from TARBELL. The field-test was positive for the presence of MDMA.

9. At the time of his arrest for the above-described conduct, PHILIP HAROLD TARBELL was on pretrial release from an arrest in the Northern District of New York. Specifically, TARBELL was arrested on November 11, 2010 at a U.S. Border Patrol checkpoint after officers discovered nearly 100 pounds of marijuana inside two hockey bags in the back of TARBELL's vehicle. TARBELL subsequently pled guilty to possessing less than 50 kilograms of marijuana with intent to distribute, and was released on bail pending sentence.

WHEREFORE, your deponent respectfully requests that the defendant PHILLIP HAROLD TARBELL be dealt with according to law.

MILIGROS SERRANO
Task Force Officer
Drug Enforcement Administration

Sworn to before me this
4th day of November, 2011

E